**In the Matter of the IMPLEMENTATION OF UTILITY ENERGY CONSERVATION IMPROVEMENT PROGRAMS and the Establishment of a Utility Renewable Resources Pilot Program.**

**No. C7–84–2241.**

Court of Appeals of Minnesota.

May 28, 1985.

Lawrence G. Acker, Patrick J. Whittle, LeBoeuf, Lamb, Leiby & MacRae, Washington D.C., for appellant.

Robert S. Lee, Mackall, Crounse & Moore, Minneapolis, for Hanna Mining Co.

Hubert H. Humphrey, III, Atty. Gen., Karl Sonneman, Sp. Asst. Atty. Gen., St. Paul, for Minnesota Public Utilities Comm.

Elmer B. Trousdale, Oppenheimer, Wolff, Shepard & Donnelly, St. Paul, for Peoples Natural Gas Co.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and RANDALL, JJ.

## OPINION

POPOVICH, Chief Judge.

Hanna Mining Company appeals from an order approving Peoples Natural Gas Company's conservation improvement program and the denial of its motion for reconsideration. It contends the Minnesota Public Utilities Commission (MPUC) failed to follow appropriate procedures and erred by not ordering a contested case. We remand.

## FACTS

In 1983, the legislature amended Minn. Stat. § 216B.241 to require the MPUC to:

> insure that every public utility with operating revenues in excess of $50,000,000 operate one or more programs * * * which make significant investments in and expenditures for energy conservation improvements.

1983 Minn.Laws ch. 179, § 7 (codified at Minn.Stat. § 216B.241, subd. 2 (1984)). In October 1983, the MPUC, by order, outlined a procedure it would use to meet its responsibilities under Minn.Stat. § 216B.241 and asked interested parties to submit comments. It found Peoples would be among those subject to its order.

After receiving initial comments, the MPUC ordered utilities to meet certain requirements when submitting their conservation improvement programs.

Peoples is an operating division of Inter North, Inc., and distributes natural gas at retail to approximately 73,000 customers in 87 communities in southern, east-central and northern Minnesota. It filed a proposed conservation improvement program. A number of organizations and customers, including Hanna, an industrial customer, made comments. Hanna objected to the MPUC's proposed decision-making process and requested formal evidentiary hearings.

The MPUC conducted a public meeting in April 1984. Hanna attended and made comments. It made written comments on two subsequent occasions. Each time it objected to the procedures being used by

the MPUC. Hanna asked that a number of issues be addressed, including the accuracy of the cost benefit projections and the appropriate level of funding.

On June 7, 1984, the MPUC issued a notice of supplemental procedures. It noted "a wide divergence of opinions among the participants concerning a whole host of issues" and concluded its procedures should be modified. The MPUC directed the utilities to refine and rework their proposals in accordance with the Commission's general goals and concerns of other parties. Then a period of negotiation was ordered:

> to allow the participants to find what common ground exists and to more adequately reflect the legislative directive and correspond to the Commission's goals.

The MPUC also created a task force "to gather viewpoints" from participants regarding several issues. Specifically, the task force was asked to interpret four parts of Minn.Stat. § 216B.241, subd. 2 and recommend whether conservation program costs should be allocated to all consumers or just to the class benefiting from the programs. The task force report was filed with the MPUC on September 7, 1984.

On October 16, 1984 after finding all parties recommended approval, the MPUC approved Peoples' $200,000 first year conservation improvement program. The program includes a weatherization on wheels project, conservation displays in Peoples' local offices, and a neighborhood energy workshop and audit program sponsored in conjunction with the City of Worthington. In making its determination that Peoples' program constituted a "significant investment in and expenditure for energy conservation improvements" under Minn.Stat. § 216B.241, the MPUC generally used the task force's method of analysis.

Hanna's motion for reconsideration was denied, and Hanna appealed.

## ISSUES

1. Does Hanna have standing to bring this appeal?

2. Was the MPUC required to order a contested case proceeding before approving People's conservation improvement programs?

3. Did the MPUC properly adopt the procedures it used?

## ANALYSIS

1. The MPUC contends this court has no jurisdiction to hear this appeal because Hanna fails to meet the threshold statutory requirement of being an aggrieved person.

> Any party to a proceeding before the commission or any other person, aggrieved by a decision and order and directly affected by it, may appeal from the decision and order of the commission in accordance with chapter 14.

Minn.Stat. § 216B.52 (1984). Two categories of persons are eligible to appeal. Hanna does not claim it is a party to the proceeding but rather claims that as a major industrial rate payer it is aggrieved and directly affected by the MPUC order.

The Minnesota Supreme Court defined "aggrieved party" for the purposes of appeal under the Minnesota Administrative Procedure Act (MAPA), Minn.Stat. § 15.0426 (now codified at Minn.Stat. § 14.-63 (1984)) as:

> one who is injuriously or adversely affected by the judgment or decree when it operates on his rights of property or bears directly upon his personal interest.

*In re Getsug*, 290 Minn. 110, 114, 186 N.W.2d 686, 689 (1971). A person must make a similar showing of aggrievement before seeking review under section 216B.52.

Minn.Stat. § 216B.241, subd. 2 requires a public utility with operating revenues in excess of $50,000,000 to make "significant investments in and expenditures for energy conservation improvements." These investments and expenses:

> shall be recognized and included by the commission in the determination of just and reasonable rates as if the investments and expenses were directly made

or incurred by the utility in furnishing utility service.

Minn.Stat. § 216B.16, subd. 6b (1984). The MPUC recognizes expenditures for conservation improvement programs will be included in the total cost pool used for determining rates. It argues, however, that the effect upon Hanna is insubstantial and without consequence because these costs have yet to be directly imposed upon Hanna in a rate proceeding.

Standing is a jurisdictional question to be determined by this court. *See Utility Users League v. Federal Power Commission*, 394 F.2d 16, 19 (7th Cir.), *cert. denied*, 393 U.S. 953, 89 S.Ct. 377, 21 L.Ed.2d 365 (1968). We conclude the MPUC's order bears directly upon Hanna's interest and adversely affects it. The MPUC consistently allocates costs to all classes of Peoples' customers including Hanna. While it is possible the MPUC could change its method of allocating costs and directly allocate costs to the customer class receiving the benefits of energy conservation improvements, it would be speculative to assume it will do so. Since Minn. Stat. § 216B.241 requires a public utility to make "significant" investments and Hanna can be expected to bear a share of these costs, it has standing in this matter.

Hanna also participated in the MPUC's proceeding in this matter, albeit to a limited extent. Participation in an administrative proceeding does not necessarily imply a right to review as an aggrieved person. Nonetheless, the circumstances are not without significance. *See Utility Users League*, 394 F.2d at 22 (Swygert, J., concurring). Hanna's participation below strengthens its stature as a person aggrieved by the MPUC's order.

2. Hanna contends the MPUC was required to order a contested case proceeding before approving People's conservation improvement programs.

"An agency shall initiate a contested case proceeding when one is required by law." Minn.Stat. § 14.57 (1984). A contested case is:

a proceeding before an agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing.

Minn.Stat. § 1402, subd. 3 (1984). MAPA itself does not provide a right to a contested case hearing. Rather it provides the procedure to be followed when another statute grants such a right. *Cable Communications Board v. Nor-West Cable Communications Partnership*, 356 N.W.2d 658, 665 (Minn.1984). A contested case proceeding may also be required by the constitution. *Id.* at 666. Thus, the MPUC must initiate a contested case proceeding if Hanna has a right to a contested case hearing under Chapter 216B or under the federal or state constitutions.

The MPUC's authority to make an order regarding Peoples' participation in energy improvement programs is found in Minn.Stat. § 216B.214 (1984). This statute provides:

The commission *shall* nevertheless *insure* that every public utility with operating revenues in excess of $50,000,000 operate one or more programs, *under periodic review by the commission,* which make significant investments in and expenditures for energy conservation improvements. The commission shall give special consideration to the needs of renters and low income families and individuals.

*Id.* (emphasis added). This statute requires the commission to "insure" that certain utilities operate conservation improvement programs by periodically reviewing them. It does not require a hearing. By explicitly requiring periodic review, the legislature has imposed informal proceedings rather than formal contested case proceedings. *Cf. Cable Communications Board*, 356 N.W.2d at 664.

Hanna relies on Minn.Stat. § 216B.09 (1984) as authority that a contested case is required. This statute provides:

The commission, after hearing upon reasonable notice had upon its own mo-

tion or upon complaint, may ascertain and fix just and reasonable standards, classifications, regulations, or practices to be observed and followed by any or all public utilities *with respect to the service* to be furnished * * *.

*Id.* (emphasis added). Hanna's reliance on this statute is misplaced. The service referred to in the statute is defined by Minn. Stat. § 216B.02, subd. 6 (1984) as:

natural, manufactured or mixed gas and electricity; the installation, removal, or repair of equipment or facilities for delivering or measuring such gas and electricity.

*Id.* Energy conservation improvements are not "service" as defined by Minn.Stat. § 216B.02, subd. 6, but rather are purchases or installation "of any device, method or material that increases the efficiency in the use of electricity or natural gas" and includes such materials as insulation and caulking. Minn.Stat. § 216B.241, subd. 1(b) (1984). The service referred to in Minn.Stat. § 216B.09 is limited, and the statute does not require hearings before a conservation improvement program can be implemented.

■ Minn.Stat. § 216B.14 (1984) also provides for hearings under certain conditions.

The commission upon complaint or upon its own initiative and whenever it may deem it necessary in the performance of its duties may investigate and examine the condition and operation of any public utility or any part thereof. In conducting the investigations the commission may proceed either with or without a hearing as it may deem best, but it shall make no order without affording the affected parties a hearing.

*Id.* Under Minn.Stat. § 216B.241, the affected parties would be Peoples because it is a public utility with operating revenues in excess of $50,000,000, the City of Worthington because it is a co-sponsor of the energy improvements, and the recipients of energy improvements. Hanna is not a member of this group and need not be afforded a hearing.

■ Hanna also contends it has a constitutional due process right to a contested case hearing.

The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Hanna claims it has a property interest in the existing rates.

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Cable Communications Board,* 356 N.W.2d at 666 (quoting *Roth,* 408 U.S. at 579, 92 S.Ct. at 2710). Utility customers are not entitled to fixed utility rates. *Sellers v. Iowa Power and Light Company,* 372 F.Supp. 1169, 1172 (S.D.Iowa 1974). Therefore, Hanna has no property interest in existing rates and no constitutional right to a hearing.

■ 3. Hanna asserts the procedure used by the MPUC was illegal. When a hearing is not required as a matter of law or constitutional right, procedures are left to the agency to promulgate through rulemaking. *Cable Communications,* 356 N.W.2d at 666. Minn.Stat. § 14.06 (1984) requires agencies to adopt procedural rules in certain circumstances:

Each agency shall adopt rules, in the form prescribed by the revisor of statutes, setting forth the nature and requirements of all formal and informal procedures related to the administration of official agency duties to the extent that those procedures directly affect the

rights of or procedures available to the public.

*Id.*

By order, the MPUC adopted procedures relating to the review of investments in energy conservation programs. It changed procedure several times during the course of its decision-making process. By doing so, it failed to give proper notice of the rules which were applicable to the public, including Hanna. *See Monk and Excelsior, Inc. v. Minnesota State Board of Health,* 302 Minn. 502, 509–10, 225 N.W.2d 821, 825 (1975). The procedures used by the MPUC related to the administration of its official duties and directly affect the rights and procedures available to the public. The MPUC erred by not properly adopting rules relating to its procedures as required by Minn.Stat. § 14.06.

### DECISION

Hanna has standing to bring this appeal. It has no right to a contested case proceeding under Chapter 216B or the constitution. The MPUC is required to properly adopt procedural rules.

Remanded.