CITY OF NORTH ST. PAUL, et al., petitioners, Appellants,

City of Maplewood, et al., petitioners, Appellants,

City of Little Canada, et al., petitioners, Appellants,

City of White Bear Lake, et al., petitioners, Appellants,

City of Vadnais Heights, petitioner, Appellant,

v.

MINNESOTA WATER RESOURCES BOARD, Defendant,

Ramsey County, et al., initial petitioners for establishment of Watershed District, Respondents.

No. 47376.

Supreme Court of Minnesota.

Dec. 9, 1977.

Roger A. Jensen, St. Paul, for Vadnais Heights.

Seldon H. Caswell, St. Paul, for City of No. St. Paul.

Donald L. Lais, St. Paul, for City of Maplewood.

Clayton Parks, Jr., St. Paul, for City of Little Canada.

Thomas W. Newcome, St. Paul, for White Bear Lake.

Frank J. Murray, St. Paul, for respondents.

Heard before SHERAN, C. J., and TODD and SCOTT, JJ., and considered and decided by the court en banc.

PER CURIAM.

The Minnesota Water Resources Board (Board) granted a petition to establish the Ramsey-Washington Metro Watershed District (District). Appellants opposed inclusion of the Phalen Creek Subwatershed in the new district. They sought review of the proceedings in district court, which affirmed the action of the Board. On appeal to this court, we affirm.

In February 1974, a petition was filed [1] with the Board to establish a watershed district pursuant to the provisions of Minn.St. c. 112. During the summer of 1974, public hearings were held, at which time appellants objected to the inclusion of the Phalen Creek area on the ground that it constituted a separate and distinct watershed. They alleged that the waters of the Phalen Creek Watershed are not physically mingled with those of the remainder of the District and that the water management problems of the Phalen Creek area are substantially different. The Board rejected these arguments and ordered the establishment of a district, which included the Phalen Creek Watershed. An appeal was taken to the district court, which affirmed the Board's order in all respects.

---

1. The original petition requested that the new district be named the "Battle Creek Watershed District." Subsequently, the request was changed to the present "Ramsey-Washington Metro Watershed District."

Two issues are presented on this appeal:

(1) Must a decision by the Board to establish a new watershed district be based on "scientific evidence"?

(2) Was the Board's order in this case supported by substantial evidence in view of the entire record?

1. Appellants' first argument focuses on the language and purpose of Minn.St. c. 112. It is urged that the Board's decision to include a particular area as a part of a proposed new watershed district must be based upon "scientific evidence." This contention is derived from the fusion of two statutory provisions and the dictum of this court in a recent decision.

Appellants first note that the purpose of the Watershed Act is—

"* * * to carry out conservation of the natural resources of the state * * upon sound *scientific* principles * *." Minn.St. 112.34, subd. 1. (Italics supplied.)

Next, appellants observe that the Board may grant a petition for the establishment of a watershed district if it finds "* * * that the *purpose* of this chapter [c. 112] would be subserved" thereby. Minn.St. 112.39, subd. 3. (Italics supplied.) Finally, appellants cite the dictum of this court in *Minnesota Water Resources Bd. v. County of Traverse*, 287 Minn. 130, 133, 177 N.W.2d 44, 46 (1970), to the effect that—

"* * * the Board * * * must apply scientific principles [in establishing watershed boundaries] * * *."

Reading these items together, appellants reason that if (1) the Board can order the establishment of a watershed district only where such order would further the purpose of c. 112, and (2) the purpose of c. 112 is to manage water resources in a manner consistent with scientific principles, then the Board is ipso facto required to base its decision on "scientific evidence."

In the hearings before the Board, the petitioners offered as evidence a hydrological study covering a portion of the proposed watershed area. The study did *not* consider hydrological conditions in the Phalen Creek area which appellants seek to have excluded from the District. As a result, appellants argue, the decision to include the Phalen Creek Subwatershed in the newly created district was not based on "scientific evidence" and therefore violated the "rule" which appellants derive from c. 112.

■ While appellants' argument has superficial rhetorical appeal, it does not withstand scrutiny. The fact that the Board is obliged to base its decisions on scientific principles does not mean that the factual data to which such principles are applied must be in some sense "scientific." Stated alternatively, "principles" and "evidence" are not synonymous. Scientific principles can be utilized to evaluate factual evidence which is *either* ordinary or "scientific" in nature.

■ Undoubtedly, when the legislature stated that water resources are to be managed in accordance with scientific principles, it did not intend to confine the Board to a consideration of scientific data only. Rather, the statutory language serves to underscore the legislature's desire to have resource-related decisions grounded in scientific or technological rather than political or other considerations. This desire conforms to the fact that natural resource problems do not observe artificial political boundaries and do not respond to traditional political solutions. We therefore conclude that appellants have misconstrued the legislative purpose underlying the enactment of c. 112 and their argument must be rejected.

■ 2. Turning to appellants' claim that the evidence is insufficient to support the Board's order, we observe that our scope of review of administrative decisions of the Board is governed by the substantial evidence requirement of Minn.St. 15.0425. We defined the court's role in these proceedings in *Quinn Distributing Co. Inc. v. Quast Transfer, Inc.*, 288 Minn. 442, 448, 181 N.W.2d 696, 699 (1970), when we said:

"* * * Even though that 'substantial-evidence' test may be more restrictive than the 'any-evidence' or 'scintilla'

approach, it is clear that under that provision there must remain a substantial judicial deference to the fact-finding processes of the administrative agency. * * *

" ' * * * The functions of factfinding, resolving conflicts in the testimony, and determining the weight to be given to it and the inferences to be drawn therefrom rest with the administrative board. * * *

" 'The strictures of this type of judicial review require that both the trial court and this court refrain from substituting their judgment concerning the inferences to be drawn from the evidence for that of the agency. Unless there is manifest injustice, this limitation applies even though it may appear that contrary inferences would be better supported or we would be inclined to reach a different result, were we the triers of fact.' " (Quoting *Gibson v. Civil Service Board,* 285 Minn. 123, 126, 171 N.W.2d 712, 715 (1969).)

■ In applying these standards to the evidence in this case, we note that Minn.St. 112.36 enumerates 11 conservation purposes to be served in establishing a watershed district. It is only necessary that one of these interests be furthered in order to justify the creation of a watershed district. *Markwardt v. State, Water Resources Board,* Minn., 254 N.W.2d 371, 374 (1977). We find that the evidence here clearly supports several of the purposes set forth in the statute. Accordingly, we affirm the judgment of the district court.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.